We'll call the next case, case number 234001, XMission v. PureHealth Research. Counsel. May it please the court, John Nielsen for XMission. I'd like to reserve four minutes, if I could, for remodel. I'd like to focus subject, of course, to this court's questions on two things today. First of all, the express aiming requirement, and second of all, consent. On express aiming, this court was clear in Dudnikoff that the focus of this element here is on the defendant's actions, what they knew and what they did. I'm having a little trouble hearing you. Could you bring the microphone a little closer to you and maybe just articulate as best you can? Thank you. Yes, your honor. This court was clear in Dudnikoff that the focus of this element is on the defendant's intentions, what they knew and what they did. PureHealth had actual knowledge that they were sending emails to Utah residents because they keep track of what they call targets. That's nice express aiming language of both the, well, of the names of the email addresses, physical addresses, and IP addresses. They know exactly where this is going. I'm intrigued about, they had records of where those email addresses went, and they personally sent some of those email addresses. Correct. And sometimes I know we say in cases, a corporation is responsible for what its entire organization knows, including what's in the records. On the other hand, there is no evidence that anybody in the corporation had that aha moment of, look, we know we're going into Utah because we can make this match. So I'm, I mean, I think it's just a, I think we've attributed that match, even though there's no evidence of it, but I guess all I'm really asking you is, there is no evidence that anybody in the company made that aha connection in testimony before the court. Yeah, the person actually sending the emails knew that. You could call it actual knowledge that the left hand doesn't know what the right hand is doing, or maybe they do. That's just kind of a non-event, but it's at least constructive knowledge. When you get to constructive knowledge, then it's easy. Is constructive knowledge sufficient? Yes, and I've cited cases for that. And this was active, not passive. In the internet context, it really matters whether you're just posting something online for all the world to see, and you don't know who's coming and visiting, or at least you don't control that, or whether you're expressly, again, targeting here, aiming at somebody in a particular place. This is active, again, showing express aiming. I guess I do question the, I understand how you say they're keeping track of targets, and what that means is they're keeping track of people who have previously purchased a product from them, their actual customers. So they're essentially targeting customers with their future emails, with their direct emails, but does targeting customers, can you explain how targeting customers, past customers, equates with targeting within the state, essentially, targeting because they're in Utah? Sure, so this court said in Far West that solicitation is evidence of express aiming, is some evidence. It's not dispositive, of course, but it certainly is, it's something, and it's important here. This also goes a little bit to the consent point, and that is, the response from Pure Health was, well, and this is what the district court essentially believed in its ruling, they consented to receive emails, therefore, there can be no cause of action for these emails, but I would note, if you look at 7704, or a few of them, sub 4A, 5A, and D2, consent, affirmative consent is only a defense, a statutory defense for three things. One is for porn emails, one, the other, another is for emails that contain whether or not something is an ad, and the other is for opt-out emails. It is not, consent is not a defense to any other violation of the Cannes Spam Act, and that includes, as we've argued in our brief, consent to receive emails is not consent to receive tortious emails. It's not consent to receive deceptive emails, any more than it would be consent to receive a virus, or a phishing email, or something like that. It necessarily means that the emails themselves must be lawful. Well, I guess I'm still not hearing your answer. I mean, in Schrader, we use the language, basically, the defendant has to deliberately direct its message at an audience in the forum state, and intend harm to the plaintiff occurring primarily, or particularly, in the forum state, and I guess I'm not understanding, or I'm not making the connection between the fact that they have these physical addresses for the people who have purchased products from them, and that's apparently how they get the address, but that's the reason that they're targeting them, is because they've opted in, essentially, not because they're in Utah. Well, two things. Is that a distinction that's valid, as to why they target these folks? Well, this, I understand, is the essence of Pure Health's argument, which is,  But, when you know exactly where they... But I would like you to respond to that argument. Sure. When you're targeting somebody in a particular state, and soliciting business from that state, and sending unlawful emails to that state, then the essence is the emails themselves are the harm. This is not like a lot of cases where emails are evidence of another transaction, like here's our negotiating a contract that we eventually signed in X state, or X forum, or whatever. The emails themselves are the harm. So this is much like Calder in that respect, in the sense that the Florida company is writing about somebody in California, where the harm is going to take place. This is a Delaware company, with its principal place of business in Wyoming, or vice versa, rather. I think it's actually Virginia, not Delaware. But, regardless, other states targeting people within Utah, and causing the harm in Utah. Well, is it also partly, is your argument that, because they have had these sales in Utah, they've been doing business in Utah, and they know that because they have had these sales, and they have these physical addresses. And so they are essentially targeting customers in Utah, based on their prior business in Utah. Yes, and they're paying sales tax on those things, and all that sort of thing. But I wonder if that's kind of how it connects, because they know where they've been doing business. Yes, correct, and they know where these people are, and they want to get more business from these people. And is that enough under Fluent, that for purposes of specific jurisdiction here, the fact that they knew that the newsletter emails were going to Utah, they had knowledge, whether it's constructive or actual, is that enough? There are two ways that this differs from Fluent, and maybe even a third. The first is that these were direct emails sent by PureHealth itself, not by these third-party affiliates. Second reason is that they knew that they were targeting people in Utah. The third reason is that the business model in Fluent was very different than the PureHealth business model. The PureHealth business model, the record says that they get 90% of their sales from these newsletter emails that the company sends out itself to past customers, trying to make them future customers, get them to come back and buy more of their products. But Fluent was much more in the information business. Fluent was about gathering things, using third parties to sell on the market to whoever was interested in marketing to people, not in particular states. So I think that's three reasons that Fluent is distinguishable. Is it enough? I think it's enough that they, unlike Fluent, one, were sending them themselves, and two, knew exactly where these people were to whom they were sending these emails. Well, I suppose there are lots of cases that say that you've directed your activity into a state when, in fact, you just want to get customers. And the purpose was not, let's get customer, I mean, if you buy a marketing ad in California, you're clearly focusing on the fact that it's geologically located in California. But if you're addressing just an existing customer, you don't really care where that customer is. But it is still directed activity that you know to be in a state, and you know it's going to have an impact on that state, even though that's not your motive. There's knowledge that you have directed activity. But all this discussion of directed activity makes me want to go to a second test, which is harmful effects. Are you arguing both as a constitutional ground for jurisdiction here? No, this is just harmful effects. Yeah. Yes. But, well, also directed activity could be a justification. But you're relying primarily on harmful effects. That's correct. Well, on harmful effects, then you look at the email monitoring and the effect on the web information, well, the email server in the state, I suppose. Yes, and that's why CAN-SPAM gives standing to internet service providers like xMission, because the harms are visited on xMission by having to upgrade and expand its infrastructure to deal with all these spam emails, deal with customer complaints. So if you're focusing on harmful effect, the directed activity, which would be an alternative ground, really doesn't go to harmful effect. I mean, because you can have a harmful effect whether you direct the activity there or not, if you know that the harmful effect will be there. Well, the test under Calder that this court has elaborated for harmful effects includes both express aiming and causing harm in the jurisdiction in the forum state. If there are no further questions, I'll reserve the balance. I have one more question. Oh, yes. If we agree with you on the newsletter emails, do we need to reach the opt-out emails? No, you don't. Just need one. Thank you. Good morning. May it please the court. Scarlett Smith on behalf of Pure Health Research. This case involves xMission's failure to do the bare minimum that was required by traditional notions of fair play and substantial justice. That is to allege or make non-speculative, non-conclusory allegations that would support jurisdiction. Utah and federal constitutions require xMission to show that Pure Health had minimum contacts with Utah. That minimum contacts test requires the showing of purposeful development or purposeful direction actions, and that the injury sustained arise from those forum-directed activities. Now, just as Judge Epple just discussed, the only framework that is at issue in this case is the harmful effects test. The xMission has abandoned the argument with regards to market exploitation. With regards to the harmful effects test, we've looked to three elements, right? Whether it was expressly aimed at the state, not the recipient, not necessarily the plaintiff, but whether it was aimed at the forum. And then we looked to whether the brunt of the injuries could be expected to have been a consequence in that forum. Now, as my friend here pointed out, the main issues on appeal really are the expressly aimed element and the brunt of the injuries element. And as the briefing points out, there's just two sets of emails that really are at issue in this case, and that is the 655 emails that purportedly have misleading subject lines and the 85 emails that were purportedly submitted after the opt-out deadline. Now, the 85 can be handled pretty quickly. It's after plaintiff has made a non-conclusory, non-speculative allegation complaint. If the defendant puts forth an affidavit that contradicts those allegations, it's then to the plaintiff to refute that. Otherwise, a genuine dispute of fact does not exist. And with regards to those 85 emails, there can be no doubt, or the evidence that was put forward is that PureHealth had no control, no agency control over those 85 emails that were identified as being sent after the opt-out date. Is there nothing in Mr. Ashdown's declaration that contradicts that or creates a dispute about it? No, not a genuine dispute, no ma'am. What it says is there are 655 that we know came from these three domains that we know come directly from PureHealth. Then it goes into the affiliate discussion and goes on to have a passive discussion of we also have these PureHealth emails on our servers, these 85 PureHealth emails. It doesn't say that they're from those domains that are recognized as directly from PureHealth, and it doesn't identify them as being sent directly, but rather they just merely exist and they just happen to be PureHealth emails generally. So turning to the, and without showing that they came from PureHealth directly, that there can be no causal connection, right? So that can be pretty much summed up there. With regards to the 655 emails, when looking at this expressly aimed factor in the harmful effects test, we focus on the defendant's intent. And I think this goes to much of the discussion that was had, right? Although Ex Mission argues that consent is not relevant, we respectfully disagree. It would certainly be relevant to whether or not the PureHealth's intention was to reach out to Utah, or whether its intention was to reach out to folks who have invited this communication by opting in to receive additional information. Now, there's no suggestion that PureHealth just merely sent out emails to only Utah customers either. What we know is this is a nationwide campaign. So in order for this to pass muster, I think you'd have to say that PureHealth knew that this many were going to Utah, and that it had some sort of conscious regard for- But didn't it know? I mean, didn't it know the customers that were in Utah, the former customers were in Utah, and their addresses, and that the emails were going to them? Why is that not enough? I think that what this goes to is the discussion that was previously had, which is whether there was that aha moment, right? What we know is they're relying on a constructive knowledge. There is no evidence that we actually looked to those addresses. Frankly, there's no evidence that these folks actually resided at those addresses. What we know is- More than constructive knowledge. I mean, the corporation, Quah Corporation, had actual knowledge in its files. It had actual knowledge that a certain number of these people were in Utah. So I don't see it as a constructive knowledge. Here's an interesting question of whether there's that aha moment. But they had clearly constructive knowledge that they were sending to people in Utah. Your Honor, yes, they had knowledge- Or actual knowledge. That there was physical addresses associated with some of these people that were in Utah. But what they weren't looking for was their physical addresses. And mind you, it's pure speculation about whether they actually lived there, or whether they had products sent there, or whether that was just merely a billing address. Right? These are pretty attenuated ties. But nevertheless, this is where the intent comes in. Pure Health intended to send to customers who indicated that they wanted more information via email. And what they looked to, and what they targeted, was customers who wanted additional information via email. You know, that just isn't surprising, though. I mean, if I'm a seller, and I'm trying to find buyers, what I'm interested in is buyers. Absolutely. And General Motors probably would be perfectly happy to sell every one of their cars to people that lived in Vermont. It would certainly save their delivery costs. They'd just put them all on one big barge. So they don't really care. But when they know that the people they're looking for, every seller is looking for customers. But when they know their customers are in a state and impacting that state, then you have long-arm jurisdiction justified. Yes and no. This is why this comes to this express aimed element in the regards that this is about the quality and quantitative contacts, right? And what we know from the 1870 case that was recently decided here in the 10th Circuit, and from Dudnikoff, and from Schrader, is that it's not enough that you just know that someone's going to be affected, or that they have connections with the state. It's not enough. You need something more, especially in the context, in these unique contexts of emails. And as Mr. Nelson pointed out, this is a case that's just about the product of an actual email, right? And so if you are reaching out as far and wide as you can, but your intention is to reach out to those that are already customers, the knowledge that some may be in Utah is just not enough. And that's, if it were, it would really just erase all geographical bounds with regards to jurisdiction in this day and age in which all this information is virtually available by anybody. So your argument focused, what you're saying now, if I understand correctly, is as to the expressly aimed part of the harmful effects test, right? I mean, are you saying that we can't say that your client had any express aim because it just was intending to send to customers, not to Utah, just it was happenstance that they were in Utah? Absolutely, yes. And that's your position? And what is your best case to support that position? I think that that would be 1870. I think it would be X-Mission versus Fluent is similar. And to some extent, Schrader supports that as well. Give us that, I know that's in the briefs too, but just give us that. 1870? Sorry, which one are we referring to? X-Mission of UFluent is? Oh, yeah, nevermind. It's kind of the meat. You cite that enough that we know. Yeah, we recite that quite a bit. I think it'd probably be 1870, which is the one that's not much discussed. Okay, maybe not. But even if you're not satisfied. What happened in 1870? To be honest, I am conflating them. You said it was your best case, so I'm wondering what the best is. Well, to be honest, this is the one I believe is with regards to, I can't remember if it's the Oklahoma one or the Colorado one. I'll be honest, I don't remember. I've been looking at a lot of cases over the last few days. But what we know is there's a trend towards. Can I interrupt you? Yeah, absolutely. I wanted to ask about Schrader, because you said Schrader was a good case, and I understand Schrader has that language about deliberately directing the message to the home state. But Schrader also said that if the plaintiff does not show that the defendant otherwise knew where the recipient was located, the email itself doesn't demonstrate purposeful direction. Here, we have that case. We have that case where the defendant does know where the recipient is located. And Schrader at least seemed to suggest that that's enough. It does seem to suggest that, you're right. But that's an older case, and I think that the cases that have come since then, ex-Michigan v. Flewent, in 1870. Well, Flewent relied heavily on Schrader. Yeah. Yes, it does. The problem in Flewent was they didn't know that they were directing them to the state. Right, and that was the main thing. It seemed to suggest it. That was the main problem. Yeah, that was exactly what Flewent said. I completely agree. That was exactly what Flewent said. The court said, well, the reason there's no jurisdiction there was because, ex-Michigan, quote, failed to show that Flewent knew that any email, any email recipient resided in Utah. I mean, if you think Flewent is your best case, I think that that's gonna be a problem for you. It may be, but I don't think so. I think the problem is that this stems all the way back to Burger King and Walden and all of these cases that say just the plaintiff's connections with the state is not enough. Remember, this is directed at the forum, not the recipient or the plaintiff, right? It's not just about where these people or how these people are connected with the state. It's about a directed activity to the forum. And here, there's nothing that suggests that any intent, and remember, expressly aimed is concerned with the intent of the defendant, not with just the consequences or the happenstance or attenuated connection with the state, but rather the intention to go there. And if, frankly, if the court- What would be an example of that? Could you give me an example? I think that if- Of where an email would be directed to the forum. Absolutely. I think that there's, and this would actually go to one of the cases that we cite, I think that there'd be a couple of different circumstances. So, for example, this is the one regarding eBay, I believe, but if your conduct is to solicit, let's put it in this context, solicit supplements that are specifically for skiers in the Wasatch Mountains, and we have research on things for folks in the Wasatch Mountains, I think that you would likely have a case that says, yeah, this is directed to folks in Salt Lake City who want to improve their ski abilities versus the folks in Vermont and the folks in Florida and Texas. Or I think you could probably even point to, and remember, there was discovery on this issue. There were depositions. I think- That would be very solemn in the case of mass emails that you would have anything focused is what you're saying. Basically, you're not gonna have personal jurisdiction in almost any case of mass emails. I don't know that that's true. I mean, certainly some of those facts could come out in doing the research. I mean, after all, the example emails in this case are with regards to vision improvement and things like that, and when you click on the email, you get a link to research that's been conducted. Maybe the person who did the research is in Utah, at the University of Utah, and they have a focus toward that. I think there could be maybe an argument there, or perhaps there's just, hey, we know that there's a lot of MLMs in Utah, and we know those folks like to buy supplements. Let's target, there's maybe some evidence that Pure Health is targeting that specific community. I think that could certainly be something, but that's not here. That's not the case. And I'm about out of time, but if the court's not satisfied with the expressly aimed element of this case, it just needs to turn to the next element, which is did Pure Health expect that the substantial brunt of injury would occur in Utah, right? And this is just concerned with the consequences of its actions, but if you have a national mass email, I mean, there's nothing to suggest that this is the bulk of where the emails have landed, so why would we ever expect that the brunt of the injury would occur here, if especially in a context like this, where it's just the email itself that's being alleged to be wrong? If you require the brunt, meaning the majority of the impact being in one state, you're going to result in a rule that every national company, nationwide company that sells nationwide, every car company, every phone, every, not phone, but every company that sells nationwide is not gonna have jurisdiction because there won't be any state that they will expect the substantial brunt of the impact will be in a particular state. I don't agree with that. I think, let's give an example of Google. Perhaps, I would imagine that Google's probably one of the largest servers in the world. They're located in a specific place. It's possible that you could look to all email addresses and find out that 60% of the emails sent out went to a Google email. It may be fair to say that, oh, you'd have objective evidence to suggest that the brunt of any injury of having this stuff on your server would occur at Google. That's not here. We don't know how many they have. This is a very local, small internet provider. Frankly, we don't know, based on the full evidence of how many emails were sent out, what percentage this was. If I recall, it was a very small, like half a percent, a percent at most. So, to say that the brunt of it is there, but then you can also get to, and I'm over my time, so I'm happy to cede this, but I'm happy to answer any more questions if you have any. You good? Okay, thank you. Thank you so much. Bottle? Marketing has undergone a sea change in recent years. It used to be you'd take out an ad in a magazine that most of your potential customers would read and hope that they would buy this thing. It's gone from the general like that way to the specific. Now, it's about, in Fluent, for example, they talked about, this court talked about mass marketing to unidentified individuals. This is targeted marketing to identified individuals knowing exactly where they are. This is how things have shifted, and when that's the sort of business model you have, it's not unfair to subject you to jurisdiction where those emails themselves cause the harm. She said her best case was Fluent. I've already distinguished that, but I would like to talk about those a little bit. Judge Moritz, who asked about 1870, this was the case involving a Wyoming plaintiff who was dealing with a defendant who lived in Great Britain, or at least was doing a lot of business in Great Britain and Europe, and this court said it's not enough just that the plaintiff lived in Wyoming and that the defendant knew that the plaintiff lived in Wyoming. These concern all sorts of financial transactions occurring all over the world. Wyoming was not the focus at the end. That's very different than what we have here. And Schrader, there you had a company that knew. It didn't involve emails? No, I don't believe it involved emails. In Schrader, you had a company that was, at first, inadvertently routing its internet traffic through Oklahoma servers, and then the people owning the Oklahoma servers said, hey, you're using our servers, don't do that, and they kept doing it, and this court said, well, that's enough for purposeful direction. They know that this is going through Oklahoma, and they're not doing anything about it. Judge Rebell, you were asking a little bit about, and I think some of your questions both to me and to opposing counsel here, deal with a distinction that this court hasn't made but the Ninth Circuit has made that I think helps capture the idea a little bit, and that is this court has used the terms purposeful availment and purposeful direction interchangeably. They're essentially synonyms. The Ninth Circuit kind of divides those two. It says purposeful availment is more about the market. Are you availing yourself of the privilege of doing business in that market? And purposeful direction more is like, are you sending, it's basically a tort versus contract kind of idea. Purposeful availment is about contracts. Purposeful direction is about torts. This is much more like a tort case because the emails themselves are causing harm. If Pure Health were correct, that it's not enough just that you know that somebody's in a particular state and you're directing your activity there and causing harm there, then even if they had sent computer viruses along with those emails or a phishing email, then the jurisdiction would not be proper. But that just flies in the face of tort law. It flies in the face of fairness and notice. Like, of course, they should know that if they send something harmful to a jurisdiction that actually causes harm there, it's not unfair to subject them to personal jurisdiction. If there are no further questions, I urge this court to reverse. Thank you, counsel. Thanks to both counsel. The arguments have been very informative and helpful. And the case will be submitted and counsel are excused. We are going to take about a 10-minute break. 1025.